## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,    )
        )
     Plaintiff,    )
        )    Case No. 00-CR-00126-CVE-1
v.        )
        )    USM No.: 48498-008
MARLIN JAMES MACK,    )
        )
     Defendant.    )

## OPINION AND ORDER

This matter is before the Court on defendant Marlin James Mack's pro se motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(B) and § 404(b) of the First Step Act of 2018 (Dkt. # 1316).  Plaintiff filed a response in opposition to the motion (Dkt. # 1318), and Mack filed a reply (Dkt. # 1320).[1]  Having considered the parties' arguments, relevant case materials, and applicable law, the Court grants the motion.

### I.    Background

In 2002, a jury found Mack guilty of conspiracy to possess with intent to distribute cocaine, marijuana, and cocaine base, in violation of 21 U.S.C. § 846 (count one); knowingly and intentionally possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (count two);[2] laundering of monetary instruments, in violation of 18 U.S.C. § 1956(h) (count four); and knowingly and intentionally possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (count five).  Dkt. # 683, at 1; Presentencing Report, last revised Dec. 7, 2005

---

[1] Because Mack presents the instant motion without aid of counsel, the Court liberally construes his motion and reply brief.  See James v. Wadas, 724 F.3d 1312, 1315 (10th Cir. 2013).

[2] In portions of the record and relevant case law, cocaine base is also referred to as "crack cocaine."  The Court uses these phrases interchangeably in this opinion.

("PSR"), at 1-2.[3]  The verdict forms contained special interrogatories in which the jury specifically found:  (1) as to count one, that Mack participated in a drug conspiracy involving five kilograms or more of powder cocaine, 1,000 kilograms or more of marijuana, and fifty grams or more of cocaine base; (2) as to count two, that Mack possessed with intent to distribute fifty grams or more of cocaine base; and (3) as to count five, that Mack possessed with intent to distribute fifty kilograms or more of marijuana.  Dkt. ## 541, 546.

Before sentencing, the United States Probation Office for the Northern District of Oklahoma prepared a PSR using the 2001 United States Sentencing Commission Guidelines Manual.  PSR, at ¶ 33.  The statutory penalties for Mack's crimes provided for terms of imprisonment of not less than ten years to life (counts one and two) and not more than twenty years (counts four and five).  Id. at ¶ 78.  In calculating the guidelines sentence, the Probation Office applied USSG §§ 2A1.1 and 2D1.1(d)(1) to assign a total offense level of 43 based on a cross reference to first-degree murder "because the offense involved the death of two victims."  Id. at ¶¶ 14-27, 34, 40, 48.[4]  Mack's total offense level of 43 and criminal history category of III, resulted in a then mandatory guidelines sentence of life imprisonment.  Id. at ¶ 79.  The Honorable H. Dale Cook, United States District Judge, sentenced Mack to serve two terms of life imprisonment (counts one and two) and two terms of twenty years' imprisonment (counts four and

---

[3] The PSR is not available through CM/ECF but is part of the court record.  The Court's citations to documents that are available through CM/ECF refer to the CM/ECF header pagination.

[4] "A cross reference is [like] a sentencing enhancement.  It is an instruction to apply another offense guideline if the district court finds the necessary facts by a preponderance of the evidence."  United States v. Price, 44 F.4th 1288, 1291 n.1 (10th Cir. 2022); see also USSG § 1B1.5 (2023) (explaining cross references).  In 2001, USSG § 2D1.1(d)(1) provided:  "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder).  USSG § 2D1.1(d)(1) (2001).  Section 2A1.1 provided a base offense level of 43 for First Degree Murder.  USSG § 2A1.1(a) (2001).

five),[5] ordered him to serve all sentences concurrently, each with the other, and imposed a total term of five years' supervised release.  Dkt. ## 677, 811.

In 2004, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") affirmed Mack's convictions and sentences on direct appeal, summarizing the facts as follows:

> This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy.  The government presented evidence at trial showing that the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona.  From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan.  The government contends that Mr. Mack was a member of this conspiracy.

> A federal grand jury indicted Mr. Mack and fifteen alleged coconspirators. The indictment charged Mr. Mack with the following:  (1) conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 18 U.S.C. § 846; (2) possessing crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii); (3) conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h); (4) possessing marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c); and (5) criminal forfeiture pursuant to 18 U.S.C. §§ 982 and 1956(h).

> After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Mack on all counts. At trial, multiple witnesses testified to Mr. Mack's involvement in the conspiracy.  Specifically, the government introduced the following evidence of Mr. Mack's involvement in the conspiracy:  (1) the police arrested him in 1998 at a Tulsa airport in connection with a marijuana shipment; (2) he phoned and transferred money to Mr. Bellamy frequently during the duration of the conspiracy; (3) Mr. Mack assisted in and supervised the packaging and shipping of marijuana for the conspiracy on multiple occasions; (4) officers arrested Mr. Mack for possessing cocaine with intent to distribute outside of a Tulsa airport as he returned from Phoenix; and (5) several witnesses testified that Mr. Mack murdered two men that he claimed stole cocaine from him.

---

[5] While the mandatory guideline sentence was life imprisonment, the statutory maximum punishment as to counts four and five, and thus the guideline sentence for those counts, was twenty years' imprisonment.  PSR, at ¶ 78; see USSG § 5G1.1(a) (2001) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

United States v. Mack, 100 F. App'x 752, 754 (10th Cir. 2004).  The Supreme Court of the United States ("Supreme Court") granted Mack's petition for writ of certiorari, vacated the Tenth Circuit's decision, and remanded the case to the Tenth Circuit based on the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).[6]  Mack v. United States, 543 U.S. 1107 (Jan. 24, 2005).  On remand, the Tenth Circuit reinstated all non-sentencing portions of its decision, vacated Mack's sentences, and remanded the case to this court for resentencing consistent with Booker. United States v. Mack, 130 F. App'x 290 (10th Cir. 2005).

In December 2005, Judge Cook resentenced Mack, imposing the same terms of imprisonment as to all four counts.  Dkt. # 947.  In so doing, Judge Cook, who presided over Mack's trial, recalled "the violence and human abuse that was proved in the jury trial" and the "wide area encompassed by the illegal drug conspiracy and [that] many persons had been brought within its illegal activities."  Dkt. # 1318-1, at 2-3.  Judge Cook "recognize[d] that the sentencing guidelines, by reason of the Supreme Court's decisions, are no longer mandatory" but concluded that "the guidelines provided a just reasonable, and appropriate measure of sentence" considering Mack's criminal record, "the violence that was present in this case," "the scope of the conspiracy, [Mack's] leadership role in it, the amount of drugs involved, and the other danger to the public as well as acts committed by [Mack]."  Id. at 3-4.  Judge Cook expressed the need for Mack's sentence to, among other things, "protect the public from [Mack] by incapacitating him for years to come." Id. at 4.  Citing Mack's age, the details of the offenses, and the age of Mack's prior convictions, Judge Cook found "no mitigating factors that would warrant a sentence less than life."  Id. at 5.

---

[6] In Booker, the Supreme Court "held that the mandatory application of the Guidelines to judge-found facts (other than a prior conviction) violates the Sixth Amendment" and, relevant here, remedied that constitutional defect by "excis[ing] the provision of the federal sentencing statute that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively making the Guidelines advisory."  United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006).

Mack appealed, the Tenth Circuit affirmed, and the Supreme Court denied Mack's petition for writ of certiorari.  United States v. Mack, 248 F. App'x 895 (10th Cir. 2007), cert. denied, Mack v. United States, 552 U.S. 1211 (2008).

In 2007, two years after his post-Booker resentencing in federal court, Mack was sentenced in state court to serve two terms of life imprisonment without the possibility of parole following his convictions, in Tulsa County District Court Case No. CF-2002-2669, as to two counts of first-degree murder.  Mack v. State, 188 P.3d 1284, 1286 (Okla. Crim. App. 2008).[7]  In affirming Mack's state criminal judgment, the Oklahoma Court of Criminal Appeals ("OCCA") stated:

> In the early morning hours of February 17, 2000, Mack shot and killed Marlin Deshaun Teague and Dana James.  He then drove the car in which they were riding to a rural area of Tulsa County and set it on fire.  Teague and James were burned beyond recognition and identified by dental records.  Mack killed the two because they had stolen cocaine from him.  He was arrested and charged with murder in Tulsa district court.  Mack was part of a drug ring operating in Arizona, Oklahoma, Kansas and Michigan.  After an investigation in which state and federal officers cooperated very closely, Mack was charged in federal court with fifteen coconspirators on charges of conspiracy to distribute drugs and conspiracy to launder money, possession of cocaine and marijuana with intent to distribute, and criminal forfeiture.  He was tried and convicted in federal court before his state trial for murder.  A Tulsa county district attorney was cross-deputized and assisted in the federal case, and a federal prosecutor was present for Mack's subsequent state preliminary hearing.  Most of the State's non-law enforcement witnesses at the preliminary hearing testified they expected leniency in their federal cases in return for their state court testimony.  The State's witnesses for preliminary hearing essentially repeated the testimony they had already given concerning the murders

---

[7] It is not clear whether Mack's state sentences run concurrently with or consecutively to his federal sentences.  Plaintiff represents that the trial court ordered Mack's state sentences to run concurrently with his federal sentences.  Dkt. # 1318, at 6.  The Tenth Circuit's decision on Mack's resentencing appeal notes that that court "was advised that [Mack] had been sentenced to two life sentences to run concurrently."  Dkt. # 1051, at 7 n.1.  The OCCA's decision reflects that the trial court imposed two sentences of life imprisonment without the possibility of parole.  Mack, 188 P.3d at 1286.  But the Court takes judicial notice of the state court docket sheet, available to the public through Oklahoma State Courts Network, reflecting that the trial court ordered Mack's life sentences to be served consecutively to each other and consecutively to his federal sentence.  See Docket Sheet (docket entry dated Jan. 30, 2007), State v. Mack, No. CF-2002-2669, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2002-2669&cmid=1261436, last visited Oct. 31, 2024.

in federal court.  The two Oklahoma murders were used to prove the overt acts necessary for the federal drug conspiracy charge.

Id.[8]

In 2009, Mack moved to vacate, set aside, or correct his sentence, under 28 U.S.C. § 2255, and this Court dismissed the motion as barred by the applicable statute of limitations.  Dkt. ## 1079, 1105.  Nearly three years later, Mack moved for reconsideration, this Court construed the motion as one seeking relief under Federal Rule of Civil Procedure 60(b) and denied the motion, and the Tenth Circuit denied a certificate of appealability and dismissed Mack's appeal.  Dkt. ## 1130, 1132; United States v. Mack, 502 F. App'x 757 (10th Cir. 2012).

According to the inmate locator website maintained by the Bureau of Prisons, Mack presently is incarcerated at the United States Penitentiary Hazelton, in West Virginia, with an anticipated release date of life.  BOP Inmate Locator, https://www.bop.gov/inmateloc, last visited Oct. 31, 2024; see also Dkt. # 1320 (BOP document dated July 2024, identifying projected release date as unknown and projected release method as life).

## II.    Discussion

Mack seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(B) and § 404(b) of the First Step Act of 2018 ("2018 FSA" or "First Step Act"), the latter of which permits courts to retroactively apply the Fair Sentencing Act of 2010 ("2010 FSA" or "Fair Sentencing Act").

### A.    Applicable law

Federal courts generally have no authority to reduce a previously imposed sentence.  18 U.S.C. § 3582(c); Freeman v. United States, 564 U.S. 522, 526 (2011).  Section 3582(c)(1)(B) provides an exception and permits a district court, "in any case," to "modify an imposed term of

---

[8] In the PSR, the first murder victim is identified as "Marvin Teague."  PSR, at ¶¶ 23-28. The OCCA's opinion, however, identifies that victim's first name as Marlin.

imprisonment to the extent otherwise expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); see Concepcion v. United States, 597 U.S. 481, 497 n.5 (2022) (describing § 3582(c)(1)(B) as "a gateway provision that refers to whichever statute 'expressly permit[s]' the sentencing modification").  The 2010 FSA and the 2018 FSA are the relevant statutes that permit modification here.  See United States v. Mannie, 971 F.3d 1145, 1148 (10th Cir. 2020) (noting that § 3582(c)(1)(B) "does not itself provide standards" for a sentencing modification, that a "court must look elsewhere to find another statute containing said standards," and identifying 2010 FSA and 2018 FSA as statutes relevant to defendant's request to modify sentence to remedy "the statutory sentencing disparity between crack cocaine and powder cocaine offenses").

Congress enacted the 2010 FSA "to reduce the disparity in treatment of cocaine base and powder cocaine offenses."  Price, 44 F.4th at 1292.  Relevant here, § 2 of the 2010 FSA "increas[ed] the quantities of crack cocaine required to subject an offender to a mandatory minimum sentence."  Mannie, 971 F.3d at 1148.  Specifically, § 2 raised the quantity of cocaine base required to trigger a statutory penalty of ten years to life imprisonment from 50 grams to 280 grams, and raised the quantity required to trigger a statutory penalty of five years to forty years' imprisonment from 5 grams to 28 grams.  Fair Sentencing Act of 2010, Pub. L. No. 111-210, 124 Stat. 2372 (2010); Dorsey v. United States, 567 U.S. 260, 269 (2012).  But the 2010 FSA operated only prospectively.  Mannie, 971 F.3d at 1148.

Congress later enacted the 2018 FSA, "which retroactively applied the new crack cocaine quantity thresholds to those offenders who were sentenced prior to the 2010 FSA's effective date." Id. at 1149.  Section 404(b) of the 2018 FSA expressly authorizes courts to "impose a reduced sentence for a covered offense," as defined in § 404(a), "as if sections 2 and 3 of the [2010 FSA] were in effect at the time the covered offense was committed."  First Step Act of 2018, Pub. L.

115-391, § 404(b), 132 Stat. 5194, 5222 (2018); <u>Concepcion</u>, 597 U.S. at 486; <u>see also</u> <u>United States v. Opher</u>, 404 F. Supp. 3d 853, 867 (D.N.J. 2019) ("The First Step Act, while directing broad-based initiatives affecting all sentenced offenders, aims in § 404 to capture all those defendants . . . who were excluded from the Fair Sentencing Act.  Section 404 is about 'sentencing reform' and looks to that forgotten group of offenders serving sentences under guidelines deemed now, and as far back as 2010, to be overly harsh.  The relief offered under the First Step Act is a second look at those sentences.").  Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [2010 FSA], that was committed before August 3, 2010."  First Step Act of 2018, Pub. L. 115-391, § 404(a), 132 Stat. 5194, 5222 (2018).

"When a defendant moves to modify his or her sentence under § 3582(c) in accordance with the [2018 FSA], the district court must first determine if the defendant is eligible for relief under the [2018 FSA]."  <u>United States v. Gladney</u>, 44 F.4th 1253, 1260 (10th Cir. 2022), <u>cert. denied</u>, 144 S. Ct. 622 (2024).  "Eligibility for relief hinges, in pertinent part, on whether the defendant was convicted of a 'covered offense,' as that phrase is defined in the First Step Act."  <u>Id.</u>  And it is "a defendant's federal offense of conviction, not his underlying conduct, [that] determines First Step Act eligibility."  <u>United States v. Crooks</u>, 997 F. 3d 1273, 1278 (10th Cir. 2021).[9]

Next, the court must "calculate the Guidelines range as if the [2010 FSA's] amendments

---

[9] Even if a defendant is eligible for relief, "the 2018 FSA places two limitations on the court's ability to entertain a 2018 FSA motion."  <u>Mannie</u>, 971 F.3d at 1152.  A court shall not entertain a 2018 FSA motion "if (1) an offender's sentence for the covered offense was previously imposed or reduced in accordance with section 2 or 3 of the 2010 FSA, or (2) the court has already denied a previous 2018 FSA motion 'after a complete review of the motion on the merits.'"  <u>Id.</u>  Neither limitation applies in this case.

had been in place at the time of the offense." Concepcion, 597 U.S. at 498 n.6; see also United States v. Burris, 29 F.4th 1232, 1235 (10th Cir. 2022) (explaining that "a district court is obligated under the First Step Act to correctly calculate the defendant's revised Guidelines range prior to exercising its discretion to grant or deny relief").  To do this, the court must "apply the Fair Sentencing Act as if it applied at the time of the commission of the offense, not at the time of the original sentencing," id. at 497, and "should look to the minimum drug quantity associated with an eligible defendant's offense of conviction, rather than his underlying conduct," United States v. Broadway, 1 F.4th 1206, 1211 (10th Cir. 2021).  "A district court cannot, however, recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the [2010 FSA]." Concepcion, 597 U.S. at 498 n.6.

After the court has applied the 2010 FSA to calculate the defendant's revised guidelines range, the court has broad discretion "in selecting or rejecting an appropriate sentence."  Id. Beyond the 2010 FSA amendments, a court "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." Id. at 486; see also id. at 500 (holding "that the [2018 FSA] allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the [2018 FSA]"); United States v. Stanback, 377 F. Supp. 3d 618, 623 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so.").  Further, as the Tenth Circuit has explained, "no policy statements from the Sentencing Commission limit a district court's discretion when considering a sentence reduction under the First Step Act" and "a district court may vary below the Guidelines" when it considers modifying a sentence under the 2018 FSA.  Price, 44 F.4th at 1294-95.  In

addition, a court may, but is not required to, consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when it rules on a 2018 FSA motion.  See Mannie, 971 F.3d at 1158 n.18 ("Notwithstanding the fact that neither the 2018 FSA nor § 3582(c)(1)(B) reference[s] the 18 U.S.C. § 3553(a) factors, they are permissible, although not required, considerations when ruling on a 2018 FSA motion.").

By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence."  Concepcion, 597 U.S. at 487; see First Step Act of 2018, Pub. L. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); Broadway, 1 F.4th at 1213 (noting that "the First Step Act merely permits, not mandates, a court to reduce a sentence").

### B.     Analysis

Mack contends (1) that retroactive application of the 2010 FSA reduces the statutory penalties for his cocaine base offenses; (2) that the 2018 FSA, as interpreted in Concepcion, permits this Court to consider a reduction in sentence based on those revised statutory penalties and any other intervening changes of law or fact; and (3) that a reduction in sentence is warranted based on consideration of applicable § 3553(a) factors.  Dkt. ## 1316, 1320.

Plaintiff opposes a reduction in sentence, asserting that Mack is not eligible for a reduction in sentence "because his two life sentences were not based on drug quantity, but rather based upon the murder cross-reference in § 2A1.1, and Judge Cook's post-Booker conclusion that the § 3553(a) factors warranted the same sentence."  Dkt. # 1318, at 7.  Alternatively, plaintiff contends that even if Mack is eligible for a reduction in sentence, the § 3553(a) factors weigh heavily against reducing his sentence.  Id. at 7-8.

### 1.     Mack is eligible for a reduced sentence.

Mack is eligible for a reduction in sentence because he committed two covered offenses before August 3, 2010.  Mack participated in a drug conspiracy involving five kilograms or more of powder cocaine, 1,000 kilograms or more of marijuana, and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (count one); and he possessed with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (count two).  Dkt. # 947.  The statutory penalty for the violation of these statutes, as provided in 21 U.S.C. § 841(b)(1)(A)(iii) (governing offenses involving cocaine base) was modified by § 2 of the 2010 FSA.[10]  See Terry v. United States, 593 U.S. 486, 501 (2021) (Sotomayor, J., concurring in part and concurring in the judgment) (explaining that "everyone with a pre-August 3, 2010, crack conviction under § 841(b)(1)(A) or § 841(b)(1)(B), including career offenders, has a 'covered offense' and is eligible for resentencing").  And even though the multi-object conspiracy involved substances other than cocaine base, it is a "covered offense" as defined in § 404(a) of the 2018 FSA.  See United States v. Barrio, 849 F. App'x 762, 764-65 (10th Cir. 2021) (affirming district court's decision that a conspiracy conviction involving both cocaine base and powder cocaine was a "covered offense" within the meaning of § 404(a));[11] see also United States v. McSwain, 25 F.4th 533, 538 (7th Cir. 2022) (discussing "emerging caselaw," including Barrio, and accepting government's "position that conspiracy to traffic crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(iii) is a covered offense 'even if another object of the conspiracy triggered the same statutory penalty range'");

---

[10] Before and after the 2010 FSA, the statutory penalty for violating 21 U.S.C. § 846, is the same penalty that is "prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[11] The Court cites this unpublished decision, and other unpublished decisions in the discussion section of this opinion, as persuasive authority.  See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

United States v. Gravatt, 953 F.3d 258, 263-64 (4th Cir. 2020) (concluding that defendant "was convicted of a 'covered offense' where he was charged conjunctively with conspiring to distribute both powder cocaine and crack cocaine").

"As to an offender's eligibility to move for relief, the 2018 FSA has minimal requirements." Mannie, 971 F.3d at 1152. Mack satisfies those minimal requirements because he was convicted, in counts one and two, of covered offenses. Thus, he is eligible for relief under § 404(b).

### 2. Mack's revised guidelines range is lower as to count two.

Applying the 2010 FSA amendments, Mack's revised guidelines range is the same as to count one and is lower as to count two. If the 2010 FSA amendments had been in effect when Mack committed his offenses, the statutory penalty for the multi-object drug conspiracy charged in count one would have been the same—ten years to life imprisonment. When Mack participated in the drug conspiracy, the minimum drug quantities necessary to support that sentence were 5 kilograms or more of powder cocaine, 50 grams or more of cocaine base, and 1,000 kilograms or more of marijuana. 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(A)(iii), and (b)(1)(A)(vii) (2000). The 2010 FSA changed the quantity of cocaine base necessary to trigger the statutory penalty of ten years to life imprisonment by increasing that amount from 50 grams to 280 grams. But before and after the 2010 FSA amendments the minimum quantities of powder cocaine and marijuana necessary to trigger the statutory penalty of ten years to life imprisonment are the same and the quantities of those substances, as found by the jury, provide an independent basis to support a statutory penalty of ten years to life imprisonment as to Mack's drug conspiracy conviction in count one. See Barrio, 849 F. App'x at 765 (affirming district court's determination that multi-object drug conspiracy was a "covered offense" that made defendant eligible for relief under 2018

12

FSA, but also affirming district court's conclusion that "the jury's specific finding concerning cocaine powder provided a separate and independent basis for [the defendant's] life sentence" even though the quantity of cocaine base involved in the conspiracy "would not have triggered a mandatory life sentence" after the 2010 FSA amendments).  Further, applying the 2010 FSA amendments does not change the guidelines provisions calling for application of the first-degree murder cross-reference.  See Concepcion, 597 U.S. at 498 n.6 ("A district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the [2010 FSA]."); id. at 499 n. 7 ("[T]he First Step Act does not require a district court to recalculate a movant's Guidelines in any respect other than applying the Fair Sentencing Act.").  Thus, Mack's revised guidelines range as to count one is life imprisonment.

The 2010 FSA amendments did, however, lower the statutory penalty for the drug offense charged in count two—from ten years to life imprisonment to five to forty years' imprisonment—by increasing the threshold quantity of cocaine base from 50 grams to 280 grams.  Fair Sentencing Act of 2010, § 2, Pub. L. No. 111-210, 124 Stat. 2372 (2010).  Thus, if the 2010 FSA amendments had been in effect when Mack committed this offense, he would have faced a statutory penalty of five to forty years' imprisonment.  As to count two, his revised guidelines range would still be life imprisonment based on application of the first-degree murder cross-reference because nothing in the 2010 FSA impacts the guidelines provisions calling for application of the murder cross-reference.  See Concepcion, 597 U.S. at 498 n.6 ("A district court cannot, however, recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act."); id. at n. 7 ("[T]he First Step Act does not require a district court to recalculate a movant's Guidelines in any respect other than applying the Fair Sentencing Act.").  Nevertheless, the new, lower statutory maximum penalty as to count two triggers application of

USSG § 5G1.1(a), which instructs that "where the statutorily authorized maximum sentence is less than the minimum applicable guideline range, the statutorily authorized maximum sentence shall be the guideline range." Thus, Mack's revised guidelines range as to count two is five to forty years' imprisonment.

In sum, the revised guidelines ranges that provide the "benchmark" for this Court's consideration of a reduction in sentence are life imprisonment (count one) and five to forty years' imprisonment (count two).

### 3. Mack has standing to request a reduction in sentence.

Before considering whether a reduction in sentence is warranted, the Court finds it necessary to address statutory and constitutional jurisdiction.[12] Under Tenth Circuit precedent, a "court has statutory jurisdiction to entertain a 2018 FSA motion" if an offender is eligible for relief under the 2018 FSA. Mannie, 971 F.3d at 1152. As previously discussed, Mack is eligible for relief under the 2018 FSA because he committed two "covered offenses" within the meaning of § 404(a), and neither limitation identified in § 404(c) precludes this Court's consideration of his motion. This Court thus has "statutory jurisdiction to entertain [his] motion[]." Id.

But a 2018 FSA "motion must also fall within the scope of the court's constitutional jurisdiction." Id. Citing Article III's case-and-controversy requirement, the Mannie court explained that "[c]onstitutional standing has three requirements: injury in fact, traceability, and redressability." Id. at 1152-53. Focusing on the third requirement, the Mannie court further explained that if "an offender has been sentenced concurrently, the court can only redress the

---

[12] Neither party expressly discusses jurisdiction, but a federal court has an independent obligation to ensure its existence. See Gladney, 44 F.4th at 1263 ("Federal courts, being courts of limited jurisdiction, must always be sure of their own subject matter jurisdiction, including that the party seeking relief has standing.").

ongoing incarceration to the extent that some portion of the incarceration is solely dependent on the sentence of the crack cocaine offense that might be reduced under the 2018 FSA." Id. at 1153. Stated another way, "if reducing an offender's sentence under the 2018 FSA does not have the effect of actually reducing the offender's length of incarceration, then the court cannot redress the offender's injury under the 2018 FSA" and "[i]f the court cannot redress the offender's injury, then the offender does not have standing, a live controversy is not present, and the court does not have jurisdiction." Id.; see also, Price, 44 F.4th at 1290 ("Our precedent says that if the length of a prisoner's sentence is determined by a concurrent non-covered offense, and that sentence exceeds the length of the covered offense, then the prisoner does not have constitutional standing for a sentence modification.").

Price is instructive here.  In that case, the Tenth Circuit found the existence of constitutional jurisdiction in circumstances similar to those in this case.  Like Mack, the defendant in Price had been convicted of cocaine base offenses but was sentenced to life in prison based on a then mandatory guidelines range that applied the first-degree murder cross-reference.  44 F.4th at 1292. The district court adjudicating the 2018 FSA motion in Price determined that the defendant lacked standing to request a reduction in sentence, reasoning that the defendant's sentencing guidelines range "does not change because his life sentence is driven by the first-degree murder cross-reference."  Id.  Price reaffirmed the principle from Mannie that a defendant "only has constitutional standing if the sentencing court has the power to actually reduce his sentence." Id. at 1293.  The Price court then framed the question before it as "whether the now-advisory Sentencing Guidelines mandate a life sentence for [the defendant] during First Step Act sentence modification proceedings."  Id.  The Price court concluded that "the district court ha[d] discretion to reduce [the defendant's] sentence under the First Step Act" because the defendant "was not

separately charged and convicted of murder—instead, the murder enhancement is wholly subsumed within the covered drug offenses." Id. at 1295.  The Price court reasoned:

> Based on these principles, the district court was not *required* to impose a life sentence for Mr. Price's murder cross-reference because the Sentencing Guidelines are not mandatory.  In other words, the district court has discretion to vary below the Guideline range for first-degree murder and sentence Mr. Price to less than life.  Mr. Price has a redressable injury and thus has constitutional standing.  See Mannie, 971 F.3d at 1153 ("If the court cannot redress the offender's injury, then the offender does not have standing, a live controversy is not present, and the court does not have jurisdiction.").

Price, 44 F.4th at 1297 (emphasis in original).  The Price court also rejected the government's argument that the defendant's " murder cross-reference is functionally equivalent to a concurrent sentence and [the defendant] is thus ineligible for a sentence modification under the First Step Act."  Id.  On that point, the Price court stated:

> [The government] points to Mannie, where we held that when "an offender has been sentenced concurrently, the court can only redress the ongoing incarceration to the extent that some portion of the incarceration is solely dependent on the sentence of the crack cocaine offense that might be reduced under the [First Step Act]."  See id.  But Mr. Price's argument aligns with this holding because his incarceration is "solely dependent" on sentences for cocaine offenses.  Id.  And Mr. Price's sentences "might be reduced" because they do not run concurrently to an undischarged sentence of the same length, as was the situation in Mannie.  Id.  Mr. Price's sentences "might be reduced" because they were imposed under mandatory Sentencing Guidelines that are now advisory and can now be reconsidered in light of any applicable factors contained in 18 U.S.C. § 3553(a).  In cases where we ruled that a movant did not have standing for a First Step Act claim, the movant had multiple concurrent sentences of the same length with one count eligible for sentence reduction and another count ineligible.  See id. at 1152; Ellis, 859 F. App'x at 280.  This case is not comparable to that situation.

Id.

Without discussing jurisdiction, plaintiff appears to contend that Mack lacks constitutional standing to request a reduction in sentence.  In its response, plaintiff asserts that Mack is not eligible for a reduction in sentence "because his two life sentences were not based on drug quantity, but rather based upon the murder cross-reference."  Dkt. # 1318, at 7.  As previously discussed,

the relevant question for eligibility is whether a defendant seeking a reduction in sentence under § 404(b) was convicted of a "covered offense."   See Terry, 593 U.S. at 501 (Sotomayor, J., concurring in part and concurring in the judgment) (explaining that "everyone with a pre-August 3, 2010, crack conviction under § 841(b)(1)(A) or § 841(b)(1)(B), including career offenders, has a 'covered offense' and is eligible for resentencing"); Crooks, 997 F. 3d at 1278 (holding "that a defendant's federal offense of conviction, not his underlying conduct, determines First Step Act eligibility").   But even if the Court construes plaintiff's argument as one challenging Mack's constitutional standing, rather than his eligibility for relief, Price forecloses plaintiff's argument.

Applying Price's reasoning, the Court finds that Mack has constitutional standing to request a reduction in sentence.   Like the defendant in Price, Mack was not separately charged and convicted of murder in federal court.   Rather, "the murder enhancement is wholly subsumed within the covered drug offenses," the length of "his incarceration is 'solely dependent' on sentences for cocaine offenses," and his "sentences 'might be reduced' because they do not run concurrently to an undischarged sentence of the same length."   44 F.4th at 1295, 1297.   Because Mack has constitutional standing, this Court has constitutional jurisdiction to entertain his motion.

**4.      A reduction in sentence is warranted as to each life sentence.**

Mack contends that a reduction in sentence is warranted because:  (1) "[o]ut of all involved in this case [he] ha[s] served the longest period of incarceration with the least amount of cocaine and no prior felony conviction"; (2) he has served approximately twenty-three years in prison; (3) he is "a Persian Gulf Vet," a characteristic or personal circumstance that was not previously considered; (4) at least one trial witness recanted his trial testimony; (5) he has gone ninety-nine months (roughly eight years) without a disciplinary violation; (6) if he were "sentenced today [the] cross reference of murder would not apply," under Alleyne v. United States, 570 U.S. 99 (2013),

because "a mandatory life [sentence that] comes into play only by judicial factfinding by preponderance of evidence cannot stand"; (7) plaintiff's account of the relevant facts, as well as the factual account in the PSR, suggests that he played a larger role in the conspiracy than the trial evidence supports; (8) the "murders are irrelevant to conspiracy and inadmissible" and should not set his base offense level; (9) he has served the statutory maximum as to counts four and five and "that itself is a unwarranted disparity"; (10) he "will still be in state custody no threat to public" if a reduction is granted; and (11) he has "gone to great lengths for rehabilitation." Dkt. # 1316, at 3-4; Dkt. # 1320, at 1-2, 4-13.

Plaintiff opposes any reduction in sentence, asserting that the same § 3553(a) factors that Judge Cook considered at Mack's 2005 post-<u>Booker</u> resentencing "strongly counsel against a sentence reduction now." Dkt. # 1318, at 7. Plaintiff specifically contends that "[t]he brutal nature of Mack's crimes, including the murders of James and Teague and the violent invasion of the Martin home, his pivotal role in a large multi-state drug enterprise, and his lengthy criminal history" support the life sentences that Judge Cook imposed because those sentences "reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and 'protect the public from [Mack] by incapacitating him for years to come.'" <u>Id.</u> at 8. In addition, while plaintiff acknowledges that Mack has gone the last eight years without a disciplinary violation, plaintiff argues that rehabilitation alone is not an extraordinary and compelling reason for a reduction in sentence. <u>Id.</u> at 7-8 (citing <u>United States v. McGee</u>, 992 F.3d 1035, 1043 (10th Cir. 2021), and 28 U.S.C. § 994(t)).

Using Mack's revised guidelines ranges as a benchmark, considering the parties' arguments, and exercising its broad discretion to consider intervening changes in law and fact, the Court finds that a reduction in sentence is warranted as to counts one and two. As previously

discussed, applying the 2010 FSA amendments lowered the statutory penalty for count two from ten years to life imprisonment to five to forty years' imprisonment, resulting in a revised guidelines range that is capped at forty years' imprisonment by USSG § 5G1.1, but the revised guidelines range for count one still recommends a life sentence based on the first-degree murder cross-reference.

Plaintiff's arguments that no reduction in either sentence is warranted are not compelling for two reasons.  First, plaintiff's reliance on McGee and § 994(t) to argue that Mack's "rehabilitation alone cannot form a basis for reducing his sentence," Dkt. # 1318, at 7-8, misconstrues Mack's motion as one seeking a reduction in sentence under § 3582(c)(1)(A).  But neither § 994(t), which governs the Sentencing Commission's duty to promulgate policy statements regarding motions seeking relief under § 3582(c)(1)(A), nor McGee, which primarily discusses the three-step framework for considering § 3582(c)(1)(A) motions, has anything to say about a motion that, like Mack's, seeks a reduction in sentence under § 404(b) of the 2018 FSA based on the 2010 FSA amendments.  See Price, 44 F.4th at 1296 (reasoning that adjudication of a motion for compassionate release under § 3582(c)(1)(A) "requires consistency with the [Sentencing Commission's] policy statements, but sentence modification under the [2018 FSA] do not"); see also id. at 1294 ("[N]o policy statements from the Sentencing Commission limit a district court's discretion when considering a sentence reduction under the First Step Act" and § 3582(c)(1)(B)).  Second, by extensively discussing Mack's offense conduct and urging this Court to deny a reduction in sentence based on Judge Cook's 2005 assessment of the § 3553(a) sentencing factors, plaintiff effectively asks this Court to ignore § 404(b) of the 2018 FSA and Concepcion's clear guidance that a court adjudicating a 2018 FSA motion should begin by recalculating the defendant's guidelines range, as revised by application of the 2010 FSA; "may

19

consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison)"; and must "consider intervening changes when parties raise them."  597 U.S. at 486-87; see also, United States v. Brown, 974 F.3d 1137, 1145 (10th Cir. 2020) (concluding that, "in imposing a First Step Act sentence, the district court is not required to ignore all decisional law subsequent to the initial sentencing").  Plaintiff's discussion of Mack's underlying conduct and the § 3553(a) factors is relevant to this Court's consideration of Mack's request for a reduction in sentence under § 404(b).  But Mack's rehabilitation, as well as other intervening changes in law and fact that he identifies to support his motion also are relevant.

Several of Mack's arguments in favor of a reduction in sentence, however, require little discussion.  Specifically, the Court has considered and has found unpersuasive Mack's contentions that a reduction in sentence is warranted because:  (1) he has completed the sentences imposed as to counts four and five; (2) his codefendants are no longer incarcerated; (3) no sentencing court considered his status as a veteran; (4) a trial witness allegedly recanted his testimony; (5) Mack disputes the facts supporting his convictions; and (6) the "murders are irrelevant to conspiracy and inadmissible" and should not set his base offense level.  This last argument is particularly unpersuasive.  Contrary to Mack's arguments, the fact that he murdered two people in furtherance of the drug conspiracy underlying his count one conviction is highly relevant to this Court's consideration of whether, and to what extent, a reduction in sentence should be granted.  Plaintiff presented evidence at trial regarding Mack's murder of two people and Mack's subsequent state convictions based on the state jury's verdict of guilt beyond a reasonable doubt as to these same two murders reinforces the appropriateness of applying the first-degree murder cross-reference to calculate his revised guidelines range.  As plaintiff contends, Mack's role in a multi-state drug conspiracy and his brutal killing of two people undeniably justify a harsh punishment.  But

20

plaintiff's argument that maintaining Mack's life sentences, rather than modifying them, is necessary to protect the public and to ensure Mack's long-term incapacitation is undermined by a critical intervening fact and intervening changes in the law that support reducing both sentences.

As to count two, the 2010 FSA, the 2018 FSA, and Alleyne provide intervening changes in the law that support a reduction in sentence. While the 2018 FSA does not mandate any reduction in Mack's sentences, the Court finds that the remedial purposes of the 2010 FSA and 2018 FSA would not be served by leaving in place a life sentence as to count two for a drug offense that, under current law, has a maximum penalty of forty years' imprisonment. Further, because the statutory sentencing range for count two has been lowered to five to forty years' imprisonment, Mack makes a compelling argument that leaving a life sentence in place as to that conviction would be contrary to Apprendi v. New Jersey, 530 U.S. 430 (2000), and Alleyne. As the Tenth Circuit recently explained:

> In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. 2348. The Court noted that even when a legislature refers to something as a "sentencing factor," "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494, 120 S. Ct. 2348. In Alleyne, the Court applied this inquiry to facts that increase the mandatory minimum sentence, determining that "[m]andatory minimum sentences increase the penalty for a crime," so "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." See Alleyne, 570 U.S. at 103, 133 S. Ct. 2151. In summary, through Apprendi and Alleyne, the Supreme Court has held that any fact that raises the mandatory minimum or maximum sentence for a crime is an element of conviction and must be proven to a jury beyond a reasonable doubt.
>
> The Court admonished in both Apprendi and Alleyne, however, that facts simply contributing to sentencing decisions need not be found by a jury. In Apprendi, the Court clarified that it was not suggesting that it "is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute." Apprendi, 530 U.S. at 481, 120 S. Ct. 2348; see also id. ("We have often noted that judges in this country have long exercised discretion of this nature in

imposing sentence[s] within statutory limits in the individual case."). In <u>Alleyne</u>, the Court reiterated this point, commenting that "[o]ur ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." <u>Alleyne</u>, 570 U.S. at 116, 133 S. Ct. 2151.

<u>United States v. Walker</u>, 74 F.4th 1163, 1194 (10th Cir. 2023), <u>cert.</u> denied, 144 S. Ct. 611 (2024), and <u>cert.</u> denied <u>sub</u> <u>nom.</u> <u>Morrison v. United States</u>, 144 S. Ct. 1079 (2024). Application of the now-advisory guidelines to impose a sentence within the statutorily authorized sentencing range likewise does not violate the Sixth Amendment. <u>Booker</u>, 543 U.S. at 233, 245; <u>see</u> <u>also</u> <u>United States v. Cassius</u>, 777 F.3d 1093, 1097 (10th Cir. 2015) (holding that district court did not err when it "used its larger drug quantity finding solely as a sentencing factor to help determine Defendant's sentence within the prescribed statutory range" without "increas[ing] Defendant's statutory sentencing range"). In this case, when Judge Cook relied on judicial factfinding that supported application of the first-degree murder cross-reference to impose Mack's post-<u>Booker</u> life sentences for counts one and two, no <u>Apprendi</u> error occurred because the prescribed statutory range for both counts was ten years to life imprisonment. Now, however, in light of the 2010 FSA amendments, judicial factfinding that supports application of the first-degree murder cross-reference increases both the minimum and the maximum of Mack's statutory sentencing range as to count two, in violation of <u>Apprendi</u> and <u>Alleyne</u>. As to count two, the facts found beyond a reasonable doubt by the jury support a prescribed statutory sentencing range of only five to forty years' imprisonment based on Mack's conduct of possessing with intent to distribute fifty grams or more of cocaine base. Based on these intervening changes in the law, the Court reduces the sentence in count two to a term of forty years' imprisonment.

These intervening changes in the law do not, however, support a reduction in sentence as to count one. As previously discussed, the 2010 FSA amendments did not change the prescribed statutory range as to count one, and therefore do not implicate the same <u>Alleyne</u>/<u>Apprendi</u>

concerns.  Even disregarding application of the first-degree murder cross-reference that is based on judicial factfinding, the facts found beyond a reasonable doubt by the jury regarding the amounts of non-cocaine base substances involved in the drug conspiracy support a statutory sentencing range of ten years to life imprisonment.  See supra, section II.B.2.  Nonetheless, Mack identifies, and plaintiff acknowledges but fails to grapple with, a critical intervening fact that supports a reduction in sentence as to count one.  A critical fact that was unknown to Judge Cook—either at the time of Mack's initial sentencing or at the time of his post-Booker resentencing is that the OCCA, in 2008, affirmed Mack's two first-degree murder convictions and his corresponding state sentences for life without the possibility of parole.  As Mack states, this fact is significant because even if his federal sentences are reduced, he will remain in state custody without any possibility of parole.  A federal court's role at sentencing, or in this case, in modifying a sentence, is to "impose a sentence sufficient, but not greater than necessary, to comply with the factors set forth in § 3553(a).  Protecting the public from further crimes of the defendant is one of those factors, but another factor is "to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2).  Considering Mack's present age, his undisputed lack of disciplinary violations for the last eight years, and the fact that if he outlives his federal sentence he will serve life in state prison without the possibility of parole for the two murders that he committed in furtherance of the federal drug conspiracy, the Court finds that a life sentence for count one is greater than necessary to serve the sentencing factors set forth in § 3553(a).  The Court thus reduces the count one sentence to seventy years' imprisonment.

The Court concludes that these reduced sentences of seventy years' imprisonment (count one) and forty years' imprisonment (count two) reflect the serious nature of Mack's offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and will protect

the public from any further crimes that may be committed by Mack.

**IT IS THEREFORE ORDERED** that Mack's pro se motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(B) and § 404(b) of the First Step Act (Dkt. # 1316) is **granted**. The count one sentence is reduced to seventy years' imprisonment and the count two sentence is reduced to forty years' imprisonment, to be served concurrently, each with the other. The terms and conditions of supervised release remain unchanged.

**IT IS FURTHER ORDERED** that a copy of this order shall be emailed to the United States Probation Office.

**DATED** this 6th day of November, 2024.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE